## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL JIBRIL HEIZMAN,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-01565** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JILLIAN CUFFARO and** | : | |
| **RUSSELL HEWITT,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

On August 31, 2020, <u>pro se</u> Plaintiff Darrell Jibril Heizman ("Heizman"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Dauphin County Prison, Jillian Cuffaro ("Cuffaro"), CO Marshall ("Marshall"), and Russell Hewitt ("Hewitt"). (Doc. No. 1.) After the Court granted a motion to dismiss filed by Defendants Dauphin County Prison and Cuffaro, Heizman amended the complaint to raise claims only against Defendants Cuffaro and Hewitt. (Doc. No. 40.) Both Defendants have since moved to dismiss. (Doc. Nos. 42, 57.) For the following reasons, the Court will grant the motion to dismiss filed by Defendant Hewitt and grant in part and deny in part the motion to dismiss filed by Defendant Cuffaro.

### I.   BACKGROUND

On August 31, 2020, Heizman initiated this case through the filing of a complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Heizman's complaint alleged that he got into an altercation with an inmate named Gardener and another inmate sometime in 2018. (Doc. No. 1 at 4.) The altercation began when Heizman was out of his cell cutting another inmate's hair. (<u>Id.</u> at 7.) The complaint alleged that the correctional officer assigned to the unit where Heizman

was located left his post, which allowed Gardener and the other inmate to attack Heizman.  (Id.)

During the altercation, Heizman was stabbed twice in his shoulder.  (Id.)

Following the altercation, Heizman was ordered to be moved to administrative custody,

but he refused to comply with the order.  (Id.)  He was issued a misconduct citation as a result of

his refusal to move to administrative custody and was then placed in a lockdown unit where he

spent the next several months until his transfer out of Dauphin County Prison on May 6, 2019.

(Id.)  Heizman also alleged that it was "common practice" in Dauphin County Prison for him to

be shackled any time he was out of his cell, including during showers.  (Id.)  He alleged that he

suffered "countless falls and abrasions" due to the shackles and could not bathe properly.  (Id.)

The medical unit was never called to treat any of his falls, with staff in the prison instead simply

telling him to "be more careful" as they laughed.  (Id.)

Finally, Heizman alleged that "each time" he attempted to file a grievance "in regards to

what was going on," Defendant Hewitt told Heizman to drop the grievance or the block

counselor, Defendant Cuffaro, would "misplace" the grievance.  (Id.)  Heizman asserted that this

led to his complaints not reaching the proper authorities in the prison.  (Id.)  The complaint

raised legal claims of negligence, failure to protect Heizman from physical harm from other

inmates, retaliation, cruel and unusual punishment, and "abuse of power."  (Id.)

Defendants Dauphin County Prison and Cuffaro waived service of process on October 1,

2020, see (Doc. No. 9), and moved to dismiss the complaint on November 2, 2020, see (Doc. No.

12).  Defendants Marshall and Hewitt were not initially served with process and accordingly did

not respond to the original complaint.

On September 23, 2021, the Court granted the motion to dismiss, dismissed the claims

against Defendant Dauphin County Prison with prejudice, dismissed the claims against

Defendant Cuffaro without prejudice, and granted Heizman leave to file an amended complaint. (Doc. Nos. 32-33.)  By separate Order, the Court also ordered Heizman to show cause as to why his claims against Defendants Marshall and Hewitt should not be dismissed for lack of service pursuant to Federal Rule of Civil Procedure 4(m).  (Doc. No. 34.)  In response to the Court's Orders, Heizman filed an amended complaint, two motions for extension of time to amend his complaint, and a response to the show-cause Order.  (Doc. Nos. 35-38.)  In his response to the show-cause Order, Heizman requested that the Court extend the deadline for Defendants Marshall and Hewitt to be served with process, but did not provide addresses for Marshall or Hewitt or any information that could be used to obtain addresses for them.  (Doc. No. 38.)

The Court addressed Heizman's response on October 22, 2021.  (Doc. No. 39.)  The Court acknowledged Heizman's request that the deadline for service of process be extended as to Defendants Marshall and Hewitt, but noted that Heizman's amended complaint had not actually named Marshall and Hewitt as defendants and instead had only named Cuffaro as a defendant. (Id. at 2.)  Nevertheless, the Court sua sponte granted Heizman leave to file a second amended complaint given that Heizman's filings could have been liberally construed as requesting such relief and that the Court's prior order may have caused Heizman confusion as to what he was expected to plead in his amended complaint.  (Id. at 2-4.)  The Court accordingly ordered that Heizman could file a second amended complaint on or before November 22, 2021 and deferred ruling on whether Defendants Marshall and Hewitt would be served with process until Heizman filed a second amended complaint that named them as defendants.  (Id. at 4.)

Heizman filed a second amended complaint on November 8, 2021, which the Court received and docketed on November 17, 2021.  (Doc. No. 40.)  The second amended complaint

names Cuffaro and Hewitt as defendants, but does not name Marshall as a defendant.[1]  (Id.)
According to the allegations in the second amended complaint, Heizman was stabbed twice in
2017 during an altercation with other inmates on the B-Block of Dauphin County Prison.  (Id. at
4.)  Heizman was placed in solitary confinement while prison officials investigated the
altercation, after which Defendant Cuffaro allegedly returned Heizman to B-Block.  (Id.)
Cuffaro was allegedly aware that one of the inmates who had assaulted Heizman in 2017 had a
codefendant who was housed in B-Block.  (Id.)  Heizman was placed in the same dayroom as the
codefendant.  (Id.)  Heizman was in the dayroom for "30 seconds" before the codefendant
allegedly attacked Heizman from behind.  (Id.)  Defendants Cuffaro and Hewitt allegedly placed
both Heizman and the codefendant in solitary confinement after the attack.  (Id.)

The second amended complaint also raises several allegations arising from an unrelated
disciplinary charge against Heizman in 2018.  According to the allegations in the second
amended complaint, Heizman and his cellmate, Derrick Butler ("Butler") were subjected to a
search of their cell sometime in 2018.  (Id. at 5.)  The search revealed a knife hidden in Butler's
shower shoe, as well as a piece of paper that was suspected to contain K2.[2]  (Id.)  Disciplinary
proceedings were initiated against both Heizman and Butler, during which Butler admitted that
the contraband belonged to him.  (Id.)  Heizman was nonetheless taken before Defendants Hewitt
and Cuffaro for a disciplinary hearing.  (Id.)  Heizman pleaded not guilty to the disciplinary
charges against him, but Hewitt allegedly began questioning Heizman about problems that

---

[1] Heizman states in an addendum to the second amended complaint that he realized his claims
against Marshall would be "hard to prove" and dropped them on that basis.  (Doc. No. 40 at 12.)

[2] The Court takes judicial notice that K2 is a common name for a synthetic form of marijuana.
See Spice/K2, Synthetic Marijuana, UNITED STATES DRUG ENFORCEMENT AGENCY,
https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last visited May 25, 2022).

Heizman had with Cuffaro, who allegedly was Hewitt's girlfriend at the time of the hearing. (Id.)  Heizman stated that he did not have any problem with Cuffaro, but after this questioning concluded, Hewitt allegedly told Heizman that he was going to find him guilty of failure to report contraband.  (Id.)  Hewitt then reportedly laughed and Cuffaro "smirked."  (Id.)  Heizman was sanctioned with 60 days of solitary confinement as a result of the disciplinary finding by Hewitt.  (Id. at 6.)  Heizman alleges that the piece of paper that was suspected to contain K2 was never tested for the presence of K2.  (Id.)  He further alleges that his sentence of 60 days of solitary confinement turned into eight and a half months because of "petty write-ups" and that Cuffaro was responsible for collecting inmate grievances, requests to staff, and other related documents, but that Heizman's grievances and requests to staff would never reach their intended recipients.  (Id.)  Heizman alleges that the disciplinary process against him and subsequent placement in solitary confinement violated the First, Fifth, and Eighth Amendments because it violated his right to due process and constituted cruel and unusual punishment, deliberate indifference, "abuse of power," "bias," and "discrimination."  (Id.)

Cuffaro moved to dismiss the second amended complaint on November 22, 2021.  (Doc. No. 42.)  The Court issued an order on January 26, 2022, requiring counsel for Cuffaro to provide under seal any information that counsel had concerning Defendant Hewitt's whereabouts.  (Doc. No. 48.)  Counsel subsequently provided the last known address for Hewitt. (Doc. No. 49.)  The Court ordered service as to Hewitt based on this information.  (Doc. No. 50.) Hewitt moved to dismiss the second amended complaint on April 14, 2022.  (Doc. No. 57.) Heizman then filed a motion to "rebuke" the motions to dismiss on May 2, 2022.  (Doc. No. 59.) The motions to dismiss are ripe for the Court's disposition.

II.     **LEGAL STANDARDS**

A.     **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must

take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not

entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual

allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation

marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223,

230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

1192, 1196 (3d Cir. 1993)).

        In the context of pro se prisoner litigation, the Court must be mindful that a document

filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro

se complaints, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429

U.S. at 106).

        **B.      Section 1983 Standard**

        Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

Defendants argue that dismissal is appropriate because any claims arising out of assaults that occurred in 2017 or the 2018 disciplinary hearing are untimely and do not relate back to the original complaint.  (Doc. No. 45 at 11, 15-17, 24; Doc. No. 58 at 11-12.)  Defendants additionally argue that the second amended complaint fails to state a claim upon which relief may be granted and that they are entitled to qualified immunity.  (Doc. No. 45 at 11-15, 17-23; Doc. No. 58 at 12-21.)  The Court will analyze these issues seriatim.

### A.    Claims Arising from the 2017 Assaults or the 2018 Disciplinary Hearing Are Time Barred

The Court will first address Defendants' timeliness argument.  Under the relation back doctrine codified in Federal Rule of Civil Procedure 15(c), a claim raised in an amended complaint is treated as if it had been filed on the date of the original complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."  See Fed. R. Civ. P. 15(c)(1)(B); Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc., 12 F.4th 337, 344-45 (3d Cir.

2021).[3]  "Where an amendment relates back, Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality."  Glover v. FDIC, 698 F.3d 139, 145 (3d Cir. 2012).  The purpose of the relation back doctrine is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits."  Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 550 (2010).

The "touchstone" of whether claims are sufficiently related for purposes of the relation back doctrine is "fair notice," because the doctrine is "premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'"  See Glover, 698 F.3d at 145 (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984)).  "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed."  Id. (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)).  Amended claims "that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)."  See Bensel, 387 F.3d at 310.  On the other hand, "amendments 'that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously.'"  See Glover, 698 F.3d at 145 (quoting United States v. Hicks, 283 F.3d 380, 388 (D.C. Cir. 2002)).  Where the original complaint did not give the defendant fair notice of the claim that the plaintiff attempts to

---

[3] Rule 15(c) allows a claim raised in an amended complaint to relate back to the original complaint in two other situations, neither of which is relevant to the instant analysis.  See Fed. R. Civ. P. 15(c).

bring in the amended complaint and the grounds upon which the claim rests, relation back is not appropriate.  See id.

In this case, Heizman's amended complaint raises several claims related to assaults that occurred in 2017 and a disciplinary hearing that occurred in 2018.  (Doc. No. 40.)  These claims, however, were not included anywhere in Heizman's original complaint, nor were there any facts alleged in the original complaint that could have given defendants fair notice that the claims might be raised in this litigation.  See (Doc. No. 1.)  The Court's September 23, 2021 Memorandum Opinion addressing the motion to dismiss the original complaint is instructive on this point.  In that Opinion, the Court noted that Heizman raised claims relating to the 2018 assault by another inmate, his placement in administrative custody and a lockdown unit following that assault, the prison's allegedly common practice of shackling him any time he was out of his cell, and Defendant Hewitt's alleged warnings to Heizman not to file grievances about his confinement.  (Doc. No. 32 at 1-2.)  Nowhere in the Opinion did the Court note any allegations relating to a 2017 assault or a 2018 disciplinary hearing, despite the fact that the Court was obligated to give the complaint a liberal construction.  See (id.); see also Erickson, 551 U.S. at 94.  Quite simply, this was because no such allegations were present in the original complaint.  The original complaint therefore did not give the Defendants notice of claims arising from the 2017 assault or the 2018 disciplinary hearing, and relation back under Rule 15(c) is not appropriate.

Heizman raises two arguments to the contrary as to why his amended claims relate back to the original complaint.  Neither has merit.  Heizman's first argument is that in his original complaint he "spoke on his cellmate taking ownership of contraband and Defendant Hewitt still finding Plaintiff guilty of contraband."  (Doc. No. 47 at 3.)  This is simply untrue.  There are no

allegations in the original complaint relating to contraband, Heizman's cellmate, a disciplinary

hearing, or a finding of guilt during such a hearing, nor are there any allegations that could be

liberally construed as related to such matters. See (Doc. No. 1.)

Heizman's second argument is that in granting Heizman leave to amend his complaint,

the Court instructed him to "start a new complaint with no ties to anything already filed, to let it

stand alone." (Doc. No. 47 at 3.)  Thus, he argues that in adding new claims to the amended

complaint, he "simply did what was told of him." (Id.)  This argument is without merit.  In the

Court's Memorandum Opinion dismissing the original complaint and granting leave to amend,

the Court instructed that the amended complaint:

> must be complete in all respects. It must be a new pleading that stands by itself
> without reference to the original complaint or any other document already filed.
> The amended complaint should set forth Heizman's claims in short, concise, and
> plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each
> paragraph should be numbered. It should specify which actions are alleged as to
> which defendants and sufficiently allege personal involvement of the defendant in
> the acts that he claims violated his rights.  Mere conclusory allegations will not set
> forth a cognizable claim.

(Doc. No. 32 at 7-8.)  This language simply informed Heizman that his amended complaint

needed to independently comply with the pleading requirements of Rule 8 and that the amended

complaint would not be read in conjunction with the original complaint to satisfy such pleading

requirements.  It did not, as Heizman suggests, give him license to add whatever claims he

wanted to this litigation.  The Court accordingly concludes that Heizman's claims arising from

assaults that occurred in 2017 and a disciplinary hearing that occurred in 2018 do not relate back

to his original complaint.  Having reached that conclusion, the Court must determine whether the

claims comply with the applicable statute of limitations.

Heizman's civil rights claims under Section 1983 are governed by Pennsylvania's two-

year statute of limitations for personal injury actions.  See Wisniewski v. Fisher, 857 F.3d 152,

157 (3d Cir. 2017). His claims arising from the assaults that occurred in 2017 and the disciplinary hearing in 2018 are clearly untimely under this statute of limitations because the limitations periods would have expired in 2019 and 2020, respectively, but Heizman did not file the claims until November 8, 2021, the date on which he submitted his second amended complaint to prison officials for mailing. (Doc. No. 40 at 11.)

Heizman argues that the Court should excuse this untimeliness because of the COVID-19 pandemic. (Doc. No. 47 at 4-5.) He asserts that he was stuck in lockdown conditions from December 5, 2019 to November 16, 2020 and that he had limited law library access during the early months of the pandemic, which prevented him from filing the complaint prior to August 31, 2020, the date on which he filed his original complaint. (Id.)

The Court construes Heizman's argument as a request for equitable tolling of the limitations period. The question of whether a statute of limitations should be tolled with respect to a Section 1983 claim is governed by state law unless it conflicts with applicable federal law. See Pearson v. Sec'y Dept. of Corrs., 775 F.3d 598, 602 (3d Cir. 2015). Pennsylvania law allows a statute of limitations to be equitably tolled "when a party, through no fault of its own, is unable to assert its right in a timely manner." See Nicole B. v. Sch. Dist. of Phila., 237 A.3d 986, 995 (Pa. 2020) (citing DaimlerChrysler Corp. v. Commonwealth, 885 A.2d 117, 119 n.5 (Pa. Commw. Ct. 2005)).

Heizman's request for equitable tolling is without merit. He asserts that the COVID-19 pandemic prevented him from filing his original complaint prior to August 31, 2020, but the timeliness of his original complaint is not at issue. The question before the Court is whether the claims that are newly raised in his second amended complaint—which was filed on November 8, 2021—are timely. Heizman does not explain how the lockdown conditions caused by the

COVID-19 pandemic in 2020 prevented him from including the newly raised claims in his original complaint.  His equitable tolling argument is therefore irrelevant to the timeliness of the claims newly raised in his second amended complaint and the Court will reject the equitable tolling argument on that basis.  Because the newly raised claims are untimely and there is no basis to toll or otherwise excuse the limitations period, the Court will dismiss the newly raised claims arising from assaults that occurred in 2017 and the disciplinary hearing that occurred in 2018.

   **B.    The Second Amended Complaint States a Deliberate Indifference Claim Upon Which Relief May Be Granted**

   With the newly raised claims dismissed as untimely, the remainder of the Court's analysis is limited to the claim in the second amended complaint that does relate back to the original complaint: that Defendant Cuffaro was deliberately indifferent to a serious risk of harm to Heizman when she transferred Heizman to the same cell block as the codefendant of one of the inmates who allegedly attacked Heizman in 2017.[4]

   For a plaintiff to succeed on a deliberate indifference claim based on a defendant's alleged failure to protect the plaintiff from harm, the plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the defendant was deliberately indifferent to that risk, and (3) the defendant's deliberate indifference caused the plaintiff harm.  See Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)), abrogated in nonrelevant part as recognized by Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020).  The first element is an objective inquiry of whether

---

[4] Although the claims relating to the 2017 assault do not relate back to the original complaint and will be dismissed as untimely, the fact of the 2017 assault is relevant to Heizman's deliberate indifference claim relating to the 2018 assault.

the official "knowingly and unreasonably disregarded an objectively intolerable risk of harm."

See Beers-Capitol v. Wetzel, 256 F.3d 120, 132 (3d Cir. 2001).  The second element is

subjective: "the prison official-defendant must actually have known or been aware of the

excessive risk to inmate safety."  See Bistrian, 696 F.3d at 367 (quoting Beers-Capitol, 256 F.3d

at 125).

　　　　Defendant Cuffaro asserts that the second amended complaint fails to state a deliberate

indifference claim upon which relief may be granted because there is no allegation that she

"knew or had reason to know of a substantial risk to Plaintiff being attacked by inmates in the B-

Block."  (Doc. No. 45 at 12.)  According to Cuffaro, the second amended complaint does not

allege that Heizman was at increased risk of an attack by inmates on B-Block and does not allege

any prior history of attacks or animus between Heizman and inmates on B-Block that would

have put Cuffaro on notice of a risk of harm to Heizman.  (Id. at 14.)  Cuffaro further notes that

there is no allegation that Heizman warned Cuffaro of such a risk.  (Id. at 14-15.)

　　　　Having reviewed the second amended complaint and Cuffaro's arguments for dismissal,

the Court finds that Heizman states a deliberate indifference claim upon which relief may be

granted.  The second amended complaint is not particularly detailed with respect to this claim,

but it alleges (1) that Heizman was stabbed two times during an assault by other inmates in

December 2017; (2) that a codefendant of one of the assailants was housed on the prison's B-

Block; (3) that Cuffaro was aware of both the 2017 assault and the fact that the codefendant was

housed on B-Block; (4) that Cuffaro nonetheless transferred Heizman to B-Block; and (5) that

immediately upon his transfer to B-Block, Heizman was assaulted by the codefendant, which

caused Heizman physical injuries.  (Doc. No. 40 at 4.)  Taking these allegations as true and

liberally construing them, as the Court must when assessing a motion to dismiss a complaint

brought by a <u>pro se</u> litigant, the Court finds that the allegations are sufficient to state a deliberate indifference claim upon which relief may be granted against Cuffaro.

C.      **The Complaint Will Not Be Dismissed on the Basis of Qualified Immunity**

Finally, the Court will analyze whether Cuffaro is entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>See</u> <u>Schmidt v. Creedon</u>, 639 F.3d 587, 598 (3d Cir. 2011) (internal quotation marks omitted) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." <u>Id.</u>  Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." <u>See</u> <u>al-Kidd</u>, 563 U.S. at 741.  As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>See</u> <u>District of Columbia v. Wesby</u>, 583 U.S. __, 138 S. Ct. 577, 589 (2018) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." <u>See</u> <u>Mammaro v. N.J. Div. of Child Prot. & Permanency</u>, 814 F.3d 164, 169 (3d Cir. 2016) (quoting <u>McLaughlin v. Watson</u>, 271 F.3d 566, 572 (3d Cir. 2001)).  In making this determination, the Court looks to applicable Supreme Court precedent, but if none

15

exists, "a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." See id. (quoting Taylor v. Barkes, 575 U.S. 822, 826 (2015)).

The United States Supreme Court's decision in White v. Pauly, 580 U.S. __, 137 S. Ct. 548, 551 (2017), clarifies the Court's inquiry in this regard.  In that opinion, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." See id. (internal quotation marks omitted) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  The Supreme Court reiterated that the clearly established law "must be 'particularized' to the facts of the case," and cautioned that the presentation of a unique set of facts by a case is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right. See id. at 552 (internal quotation marks omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  However, a constitutional deprivation that occurs under unique factual circumstances does not necessarily warrant an automatic grant of qualified immunity.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").  There may be the rare "obvious case," where "a body of relevant case law" is not necessary, see Brosseau v. Haugen, 543 U.S. 194, 199 (2004), especially when the case in question presents "extreme circumstances" to which "a general constitutional rule already identified in the decisional law may apply with obvious clarity."  See Taylor v. Riojas, 592 U.S. __, 141 S. Ct. 52, 53-54 (2020) (internal citation and quotation marks omitted) (quoting Hope, 536 U.S. at 741).

In this case, it is clearly established law that prison officials violate the Eighth Amendment when they are deliberately indifferent to an inmate's risk of assault and the inmate is subsequently assaulted. See Farmer, 511 U.S. at 833-34. Whether Defendant Cuffaro was deliberately indifferent to the risk that Heizman would be assaulted upon his transfer to B-Block is a question of fact that the Court cannot decide at this stage of litigation. Heizman has sufficiently alleged that Cuffaro violated his clearly established constitutional rights, and dismissal on the basis of qualified immunity is therefore inappropriate.

### D.      Further Leave to Amend Will Not Be Granted as to the Dismissed Claims

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id.

In this case, because the dismissed claims are time barred under the applicable statute of limitations, the Court concludes that further leave to amend would be futile. The Court will therefore deny leave to amend and this case shall proceed only as to Heizman's deliberate indifference claim against Defendant Cuffaro arising from the 2018 assault by another inmate.

17

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant the motion to dismiss filed by Defendant Hewitt and grant in part and deny in part the motion to dismiss filed by Defendant Cuffaro.  In light of these rulings, the Court will deny Heizman's motion to "rebuke" the motions to dismiss as moot.  Defendant Cuffaro will be required to answer the allegations in the second amended complaint.  An appropriate Order follows.

<u>s/ Yvette Kane</u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania